**Mary S. HOPKINS, Individually and as Executrix of the Estate of George D. Hopkins, Deceased, Appellant,**

v.

**LOCKHEED AIRCRAFT CORPORA-TION, Appellee.**

No. 22518.

United States Court of Appeals
Fifth Circuit.

May 16, 1968.

James A. Franklin, Jr., Fort Myers, Fla., for appellant.

T. Paine Kelly, Jr., David H. McClain, Tampa, Fla., for appellee.

Before JOHN R. BROWN, Chief Judge, JONES, Circuit Judge, and BREWSTER, District Judge.

JOHN R. BROWN, Chief Judge:

By our previous decision, 358 F.2d 347, this Court certified a controlling question of Florida law to the Supreme Court of Florida, pursuant to the provisions of § 25.031 Florida Statutes, F.S.A., and Rule 4.61 Florida Appellate Rules, 32 F.S.A. The question was the important one of conflicts as to the application of a foreign (Illinois) dollar limit on damages recoverable for the tortious death of a Florida citizen from an event occurring outside of Florida.

The difficulty of this problem transcended that of our usual *Erie* travail. This was so for a number of reasons. The local materials with which to work were meagre. Additionally, there had been elsewhere a considerable change in the outlook on choice of law concepts. And, most important, the problem was not so much of trying to ascertain what had been held, as it was divining the policy considerations which the Supreme

Court of Florida would now embrace. For policy it surely is. With each state relatively free to adopt its own standards on choice of law, the selection either of a standard that limits recovery to that imposed by another sovereign or on the other hand, one which leaves the forum state to its own limits (or lack of them) presents essentially questions of that sort of policy which is inescapably a part of the judicial process.

The extent to which it is such a delicate choice is reflected by the action of the Supreme Court of Florida in this very case. The Court delivered two distinct opinions with divergent answers. In the first, Hopkins v. Lockheed Aircraft Corp., February 1, 1967, 201 So.2d 743, the Court with but two dissents held that the Illinois limitation was not applicable to a suit brought in Florida by a Florida plaintiff. However, on petition for rehearing the Court reversed itself and by a four to three decision held that Florida policy did not forbid application of the Illinois ceiling, July 12, 1967, 201 So.2d 749 (on rehearing).

With the Florida Supreme Court itself of a divided mind and with one result being superseded shortly by another, the value of this device is spectacularly demonstrated. For a Federal Court to have attempted to resolve the question on its own would have been fraught with great hazard both to litigants and the law. That is especially so since the Supreme Court out of a single mass of materials reached at different times divergent results.

Thus where *Erie* often compels the most speculative anticipation on matters not yet decided,[1] Florida's procedure gives a clear, positive, final decisive answer. It is not just a bright clear light showing the *Erie*-way, or a sign post pointing an *Erie* direction.[2] Not only is it all of those things, it is much more. For it is what the law actually is on the precise point presented to us and certified for answer. It is Florida law binding on us as we perform our *Erie* role.

In a workable, administratively efficient and expeditious[3] process all doubt is eliminated, all guess work removed. Thus the District Judge, a Florida trained lawyer,—although probably not anticipating the difficulty the Florida Supreme Court would have with the problem—made the right prediction on what the law was, and moreover, would be. The result is that the Court was correct in granting summary judgment for defendant since plaintiff has already recovered, through settlement with a third

---

1. Compare Judge Friendly's celebrated *Erie* comment: "Our principal task, in this diversity of citizenship case, is to determine what the New York Courts would think the California Courts would think on an issue about which neither has thought." Nolan v. Transocean Air Lines, 2 Cir., 1960, 276 F.2d 280, 281, rev'd, 1961, 365 U.S. 293, 81 S.Ct. 555, 5 L.Ed. 2d 571, on remand, 290 F.2d 904.

2. Much of the criteria is catalogued in cases such as: Delduca v. United States Fid. & Guar. Co., 5 Cir., 1966, 357 F.2d 204, 206–207; Ford Motor Co. v. Mathis, 5 Cir., 1963, 322 F.2d 267, 3 A.L.R.3d 1002; Duke v. Sun Oil Co., 5 Cir., 1963, 320 F.2d 853, on rehearing, 323 F.2d 518; Smoot v. State Farm Mut. Auto. Ins. Co., 5 Cir., 1962, 299 F.2d 525.

3. We certified the case on March 24, 1966. The first opinion of the Florida Supreme Court was handed down within ten months on February 1, 1967. We have been able to dispose of it without further resubmission or argument. In these days of our exploding docket and the unavoidable delay as we try to cope with our overcrowded case load, see Allen v. Johnson, 5 Cir., 1968, 391 F.2d 527 (en banc); Shafroth, Survey of the United States Courts of Appeals, 1967, 42 F.R.D. 243, this slight period of time to afford Florida the opportunity to settle the issue presented demonstrates that delay really is not an insurmountable problem in the certification procedure and certainly it never need be. Cf. Agata, Delaney, Diversity and Delay: Abstention or Abdication?, 4 Hous.L.Rev. 422, 443 (1966).

party, more than the statutory dollar limit imposed by Illinois law for wrongful death. This result we can now approve without the hesitation or uncertainties which faced us in attempting on our own to divine what the Florida law is.

Affirmed.

JONES, Circuit Judge (specially concurring).

The judges of the Supreme Court of Florida, or rather a bare majority of them, have told us how, in their opinion, this appeal should be decided. Since we have no better guide to a decision, indeed no other guide, I concur in the affirmance of the judgment of the district court.

It seems to me that some question might be raised as to the soundness of the enthusiastic and emphatic statements in the opinion of this Court concerning the decisive Erie-Tompkins character of the Florida Supreme Court's declaration of Florida law. A court of original jurisdiction is a judicial tribunal constituted for the purpose of deciding controversies between litigants and rendering judgments which are enforceable by the courts' processes. Appellate courts are constituted for the purpose of reviewing, at the instance of litigants, the judgments of lesser tribunals, and in so doing, the appellate court determines, applies, and usually declares the reasons which have guided it.

The statements of appellate courts of reasons for their decisions in adjudicating controversies between litigants, especially when such reasons are several times reiterated in successive appeals, are regarded as legal principles under the doctrine of stare decisis. Statements of principle are stare decisis precedents only when they are essential to decision by a court exercising the judicial power of adjudication.

This appeal is from a judgment entered by a United States District Court in an action brought there by Mrs. Hopkins against Lockheed Aircraft Corporation. The district court had jurisdiction over the parties and the subject matter and power to enter and enforce a judgment. This Court has jurisdiction over the parties and the subject matter and the power to affirm, reverse or modify the judgment brought before it for review on appeal. The Supreme Court of Florida had no jurisdiction over the parties or the subject matter. It had no power to make or enforce any adjudication of the controversy. The cause was not and could not have been adjudicated by it. It entered no judgment and made no decision. It did not have before it the parties or the subject matter, except as the parties voluntarily submitted argument. All that the Florida court had before it was a question posed by this Court, and all the Florida court did or undertook to do was to give its answer. This Court, adopting the Florida court's answer to the question, affirms the district court's adjudication. The action of the Florida court was not an adjudication, since only the Federal courts could enter and enforce judgment. Hence, the action of the Florida court was not an exercise of a judicial power. It was, so it seems to me, only the expression of an opinion on the law of Florida by judges well qualified to give an opinion. As such I am glad to accept it. I cannot regard it as res judicata in the cause or as a judicial decision entitled to acceptance under the rule of stare decisis.

The writer of a specially concurring opinion should, I suppose, have some hope that a useful purpose would be served thereby, however vain that hope might be. The purpose here is merely to suggest that the opinion of the Court pretty well demonstrates the desirability of abolishing the diversity jurisdiction of the Federal courts.