Marie L. GROSS and Joseph J. Gross

v.

Frank John McDONALD.

Civ. A. No. 71-871.

United States District Court,
E. D. Pennsylvania.

Feb. 15, 1973.

Bernard V. Kelly, Ship Bottom, N. J., for plaintiffs.

James J. McCabe, Philadelphia, Pa., for defendant.

### MEMORANDUM OPINION AND ORDER

EDWARD R. BECKER, District Judge.

This case calls upon us to decide interesting choice of law questions involving statutes of limitations and an automobile guest statute. Plaintiff Marie L. Gross ("plaintiff") was injured while riding as a passenger in defendant's automobile in Indiana, which has a guest statute. The journey during which the accident occurred began and was intended to end in Kentucky, where both plaintiff and defendant temporarily resided. Plaintiffs have brought this action claiming damages for her personal injuries.[1] Defendant has pleaded and argued that plaintiffs' action is barred by the Indiana guest statute, the one-year Kentucky statute of limitations,[2] or the Pennsylvania borrowing statute.[3] Plaintiffs have moved that we strike these defenses, asserting that none of these rules is the appropriate choice of law in this case. For the reasons hereinafter stated, the plaintiffs' motion to strike the defenses will be granted.

Because plaintiffs' motion to strike required a factual content, the parties entered into a stipulation of facts, supplemented by depositions, the relevant portions of which may be summarized as follows. As we have noted, plaintiff was injured while riding as a passenger in defendant's car in Indiana. At the time of the accident, both plaintiff and defendant were temporarily residing in Kentucky. Plaintiff, a New Jersey resident, was enrolled at Owensboro College in Owensboro, Kentucky, while defendant, an Irish national, was employed there.[4] Defendant's automobile was registered in Kentucky and he held an Irish international driving permit. Around 11:00 p. m. on April 18, 1969, plaintiff and defendant left on a motor trip from Owensboro headed toward a boat club in Indiana. Shortly after midnight, approximately four or five miles inside Indiana, the accident which caused the plaintiff's injuries occurred.

The Indiana guest statute provides:

> The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, while being transported without payment thereof, in or upon such motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wanton or wilful misconduct of such operator, owner, or person responsible for the operation of such motor vehicle.[5]

Defendant contends that the applicable choice of law rules dictate application of the Indiana guest statute to this case. Since jurisdiction is founded on diversi-

---

1. Jurisdiction is founded upon diversity of citizenship.

2. 7 Ky.Rev.Stat. § 413.140. The accident occurred on April 18, 1969. Suit was filed in this Court on April 13, 1971.

3. Pa.Stat.Ann. tit. 12, § 39.

4. Defendant subsequently was a temporary resident of Pennsylvania where suit was filed in this district. At the present time he is a temporary resident of Jurong Town, Singapore.

5. 8 Ind.Stat. § 47–1021, IC 1971, 9–3–3–1.

ty of citizenship, we must apply Pennsylvania's choice of law rules, Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The font of Pennsylvania conflicts law in personal injury cases is Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (1964). That decision abandoned the strict *lex loci delicti* rule in favor of a more flexible rule permitting analysis of the policies and interests underlying different jurisdictions' varying rules of law. Subsequent cases have elucidated the rule as calling for a qualitative analysis of each state's contacts with the litigation and the facts giving rise thereto. *See* Cipolla v. Shaposka, 439 Pa. 563, 267 A.2d 854 (1970); McSwain v. McSwain, 420 Pa. 86, 215 A.2d 677 (1966); Prince v. Trustees of the Univ. of Pa., 282 F.Supp. 832 (E.D.Pa. 1968); Symposium on Cipolla v. Shaposka: An Application of "Interest Analysis," 9 Duquesne L.Rev. 347 (1971).

Choice of law in the guest statute context was the issue in Kuchinic v. McCrory, 422 Pa. 620, 222 A.2d 897 (1966), where three passengers and the pilot of a private plane, all Pennsylvania residents, were killed in a crash in Georgia. The plane was returning to Pennsylvania from Florida, where the four occupants of the plane, all personal friends, had gone to attend a football game. Suit was instituted on behalf of the deceased passengers in state court in Pennsylvania. The Supreme Court of Pennsylvania held that under *Griffith* Pennsylvania law, rather than Georgia law (including a guest statute), applied.[6]

In assessing the relationships of the two states to the litigation, the Court noted:

Indeed when properly analyzed the present cases are a prime example of what has been characterized as a "false conflict", for under no stretch of the imagination can Georgia be viewed as a concerned jurisdiction. In passing its statute, Georgia un-

doubtedly intended either to protect insurance companies from collusive suits or to prevent ungrateful guests from suing their hosts; it most assuredly did not mean to encourage the exercise of less than due care by those who use its highways or airways. Georgia's only contact with the present case, as the situs of the accident, is wholly fortuitous, whereas Pennsylvania, as the place where the host-guest relationship was established, where it was intended to terminate, and as the domicile of all four of the aircraft's occupants, is the state with the most significant interest in defining the legal consequences attaching to the relationship here involved. See Griffith v. United Airlines, supra.

222 A.2d at 899–900 (footnotes omitted).

In addition to *Griffith, Cipolla,* and *Kuchinic,* we are aided in our analysis of the conflicts question before us by two recent opinions from New York: Chila v. Owens, 348 F.Supp. 1207 (S.D. N.Y.1972), and Neumeier v. Kuehner, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N. E.2d 454 (1972). *Neumeier* represents a major effort to achieve consistency in the choice of law process in guest-host conflict cases. The principles therein enunciated are as follows:

1. When the guest-passenger and the host-driver are domiciled in the same state, and the car is there registered, the law of that state should control and determine the standard of care which the host owes to his guest.

2. When the driver's conduct occurred in the state of his domicile and that state does not cast him in liability for that conduct, he should not be held liable by reason of the fact that liability would be imposed upon him under the tort law of the state of the victim's domicile. Conversely, when the guest was injured in the state of

---

6. The suit was brought prior to the decision in *Griffith* so that at the time of suit the *lex loci delicti* rule was still in effect. Nonetheless, the Supreme Court reversed and remanded for a new trial in light of *Griffith.*

his own domicile and its law permits recovery, the driver who has come into that state should not—in the absence of special circumstances—be permitted to interpose the law of his state as a defense.

3. In other situations, when the passenger and the driver are domiciled in different states, the rule is necessarily less categorical. Normally, the applicable rule of decision will be that of the state where the accident occurred but not if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants. . . .

31 N.Y.2d at 128, 335 N.Y.S.2d at 70, 286 N.E.2d at 457–458. While Neumeier's mechanical rules (1) and (2) are not applicable here, the third paragraph suggests an examination into whether displacement of the *lex loci delicti* will "advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants."

■ Looking first to the question of significant contacts, the only contact Indiana has with the litigation is the purely fortuitous circumstance of the accident occurring there. On the other hand, Kentucky, which has no guest statute, has many significant contacts with the case: both the plaintiff and defendant were temporary residents of Kentucky when the accident occurred; the relationship of the parties was centered in Kentucky; the host-guest relationship was established there; the motor trip originated there and was to terminate there; and defendant's car was registered (and presumably insured) in Kentucky. We agree with plaintiffs' contention that these contacts, when weighed against Indiana's contacts, compel the conclusion that Indiana law should not govern on the issue of liability.

The Indiana guest statute appears to have the usual policy underpinnings:

(1) to protect the "good samaritan" host from lawsuits by ungrateful guests; (2) to prevent collusive suits for recovery against insurance carriers; and, (3) a possible purpose, to assure priority in the distribution of assets of the negligent defendant in favor of injured non-guest third parties.

Chila v. Owens, 348 F.Supp. at 1210 (footnotes omitted). No vital policy interest of Indiana will be served by applying its law and denying plaintiff recovery for her injuries. No domiciliary of Indiana is affected by this action; plaintiff has no connection with Indiana and any recovery will be against an Irish national or against the proceeds of an insurance policy written on a motor vehicle registered in Kentucky and owned by a temporary Kentucky resident. It does not appear that any third party non-guest domiciliary or non-domiciliary of Indiana was injured or is asserting any claim that may involve priority in the distribution of assets. It should not concern Indiana that a New Jersey citizen, by bringing suit for injuries against her host, an Irish national, is cast in the role of an ungrateful guest. Neither does Indiana have an interest in preventing collusive suits between parties who are neither domiciled nor reside in Indiana. In short, Indiana has no interest in this suit at all and Kentucky has a strong nexus; hence displacement of Indiana's guest rule will advance relative substantive law purposes without impairment of the working of the multi-state system. This comports with the conclusion of the Supreme Court of Pennsylvania in *Kuchinic, supra,* in a closely analogous factual setting.[7]

---

7. Indeed, it might well be asserted that New Jersey, which likewise has no guest statute, has a greater interest in the matter than Indiana. Plaintiff is a resident of New Jersey. A consideration of New Jersey's interest may be used to further

Defendant's alternative argument is that if Kentucky law rather than Indiana law is applicable, plaintiffs' action is barred by Kentucky's one year statute of limitations.[8] Indiana's applicable statute of limitations is two years, the same as that of Pennsylvania, the forum state.[9] The problem with this argument is that we have decided not that Kentucky law governs this lawsuit, but rather simply that Pennsylvania choice of law principles dictate that the Indiana guest statute not be applied in this case. Similarly, Pennsylvania choice of law principles govern the choice of a statute of limitations. We therefore turn to an examination of those principles.

■ Defendant contends that the applicable choice of law rule in this case is Pennsylvania's "borrowing statute," Pa. Stat.Ann. tit. 12, § 39:

> When a cause of action has been fully barred by the laws of the state or country in which it arose, such bar shall be a complete defense to an action thereon brought in any of the courts of this commonwealth.

As noted in Prince v. Trustees of the Univ. of Pa., 282 F.Supp. 832 (E.D.Pa. 1968), in a diversity case a federal court sitting in Pennsylvania must apply the same statute of limitations as would a state court of Pennsylvania. Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Generally, Pennsylvania courts apply Pennsylvania's own statutes of limitations. Freeman v. Lawton, 353 Pa. 613, 46 A.2d 205 (1946). When the borrowing statute is by its own terms applicable, however, the courts are required to apply instead the statute of limitations prescribed by that statute. In this case, though, the borrowing statute is inapplicable. First, the statute does not require the applica-

tion of the Kentucky statute of limitations, because despite Kentucky's significant contacts with this litigation, the cause of action "arose" in Indiana where and when the accident occurred. A cause of action arises with the "occurrence of the final significant event necessary to make the claim suable." Mack Trucks, Inc. v. Bendix-Westinghouse Automotive Air Brake Co., 372 F.2d 18 (3d Cir. 1966), cert. denied, 387 U.S. 930, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967). This occurrence determines both the time the cause of action arises (for statute of limitations purposes) and the place the cause of action arises (for purposes of the borrowing act). *Id.* In the case before us, the automobile accident and the immediately resulting injuries occurred in Indiana, so that the borrowing statute would here refer to Indiana, not Kentucky, law.

Secondly, the ever-resourceful defendant argues that this action is "fully barred" under Indiana law because of Indiana's guest statute; plaintiffs did not, and could not, allege wanton or willful negligence. The borrowing statute, however, which is entitled *"Limitation of action* in foreign state a bar here" (emphasis added), provides for observance of other states' statutes of limitations, not of other defenses. *See, e. g.,* Mangene v. Diamond, 229 F.2d 554 (3d Cir. 1956); Hartmann v. Time, Inc., 166 F.2d 127 (3d Cir. 1947); Prince v. Trustees of the Univ. of Pa., *supra.*

Hence the borrowing statute does not apply to this case, and Pennsylvania's own two-year statute of limitations is controlling.

■ For the reasons stated above, we cannot apply to this case either the Indiana guest statute or the Kentucky statute of limitations, and must grant the

---

tip the balance toward displacement of the *lex loci delicti* under the analysis of *Chila.* See 348 F.Supp. at 1207: "[In sum,] New York's interest and that of New Jersey, evaluated against Ohio's connection with [this] controversy, [is] sufficient to justify displacing the rule of *lex loci delictus.*" In that case an Ohio

accident involved a New Jersey guest-plaintiff, a New York driver-defendant, and a New York car owner-defendant. The case before us thus has identical New Jersey contacts.

8. *See* note 2 *supra.*

9. Pa.Stat.Ann. tit. 12, § 34.

plaintiffs' motion to strike those defenses as insufficient, under rule 12(f), F.R.Civ.P. Anticipating this possibility, defendant has also moved that we certify the issue considered in this opinion for interlocutory appeal before the case proceeds to trial.[10] Although a controlling question of law is indeed involved, we are not of the opinion that an immediate appeal would "materially advance the ultimate termination" of this case. Nor do we consider the issues considered in this opinion to involve difficult questions of unsettled law which call for expedited appellate resolution because of their importance to the development of the law. The legislative history of subsection 1292(b)[11] indicates that the purpose of the provision was to allow a saving of litigants' time and expense in cases where interlocutory appeal might ease the district court's backlog without adding unnecessarily to the caseload of the court of appeals. This was thought to be the situation only in "exceptional" cases involving "protracted and expensive litigation," such as antitrust cases, when the district court's resolution of the interlocutory issue was the subject of "serious doubt." According to the Administrative Office of the United States Courts, "It is not thought that district judges would grant the certificate in ordinary litigation which could otherwise be promptly disposed of or that mere question as to the correctness of the ruling would prompt the granting of the certificate."[12] All of the criteria thus indicated in the history of subsection 1292(b) militate against our certifying the case before us. It is not a protracted, complicated, or time-consuming case. To the contrary, it appears from our conferences with counsel that the trial will be relatively brief, and we have listed it in our trial pool commencing April 5, 1973. The ultimate decision may be appealed, so that interlocutory appeal would place this case on the docket of the court of appeals twice rather than once. And finally, while our ruling has required some consideration and analysis, we, at least, do not feel that it is the subject of "serious doubt." We believe that justice will best be served by proceeding with the case in normal order, without certification for interlocutory appeal.

---

10. 28 U.S.C. § 1292(b) provides:
    (b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order . . . .

11. S.Rep.No.2434, 85th Cong., 2d Sess. (1958), in 1958 U.S.Code Cong. & Admin. News p. 5255; see C. Wright, Federal Courts 463–64 (2d ed. 1970).

12. 1958 U.S.Code Cong. & Admin.News p. 5259 (transmittal letter from the Administrative Office on behalf of the Judicial Conference of the United States presenting a draft of proposed § 1292(b) to Congress).